

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,        )
                                      )
vs.                                   )    No. SD38101
                                      )
STEVEN A. BENFORD,                    )    **Filed:  September 12, 2024**
                                      )
    Defendant-Appellant.         )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable David C. Jones, Judge

**<u>AFFIRMED</u>**

Steven A. Benford ("Benford") appeals the judgment of the Circuit Court of

Greene County ("trial court") convicting him of assault in the second degree, unlawful

possession of a firearm, tampering in the first degree, resisting arrest, and trespassing in

the second degree.  *See* sections 565.052, 571.070, 569.080, 575.150, and 569.150,

respectively.[1]  In his only point on appeal, Benford claims the trial court erred in

overruling his motions for judgment of acquittal and entering judgment and sentencing

---

[1] References to sections 565.052, 569.080, 569.150, and 575.150 are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.  References to section 571.070 are to RSMo Cum. Supp. 2020, including, as applicable, statutory changes effective August 28, 2020.

1

him for unlawful possession of a firearm under section 571.070 (Count II) because there was insufficient evidence to prove beyond a reasonable doubt that the weapon allegedly recovered from Benford's pocket was a "firearm" as defined by statute. Finding no merit to Benford's argument, the trial court's judgment is affirmed.

**Factual Background and Procedural History**

On November 18, 2020, former Springfield police officer Victoria Myers ("Officer Myers") responded to a call reporting a trespass at 731 East Pacific in Greene County, Missouri. The caller reported the trespasser was a black male who was possibly armed with a gun. Officer Myers arrived on scene to find several other officers on site. Because the offender was believed to be inside the house and armed with a weapon, Officer Myers and several other officers began setting up a perimeter.

While the officers were securing the perimeter, Benford exited the back of the house. The officers asked Benford to put his hands up in the air, which he refused to do. Benford began walking toward the officers, who were then able to safely get him into handcuffs. Benford was then searched and a weapon, a gray and black handgun, was found in his front right pocket. Bullets were found with the weapon. During the search, Benford told the officers he wanted to harm the officers and their families.

While Benford was taken into custody, Springfield police officer Wyatt Holdman ("Officer Holdman") arrived on scene. Upon his arrival, he was instructed to take photos of the scene, including photos of the front and back of the house, a bathroom located inside the house, and the weapon and ammunition found on Benford. The ammunition was found near the weapon at the time photos were taken.

During her trial testimony, Officer Myers identified the weapon found on Benford as a 9-millimeter Taurus PT111 handgun, and also identified the magazine and ammunition found with the Taurus. The handgun and a magazine were identified in court and admitted as State's Exhibit 13. Officer Myers did not inspect, disassemble, or fire the weapon in question prior to her testimony. Officer Holdman also identified the weapon as a 9-millimeter Taurus handgun during his testimony.

After a bench trial in April of 2023, the trial court found Benford guilty on all counts, including unlawful possession of a firearm. This timely appeal followed.

**Point on Appeal**

Standard of Review

"In reviewing the sufficiency of the evidence in a court-tried criminal case, the appellate court's role is limited to a determination of whether the [S]tate presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty." *State v. Brooks*, 446 S.W.3d 673, 674 (Mo. banc 2014) (quoting *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005)). This Court does not weigh the evidence, and accepts all evidence and reasonable inferences in support of the verdict as true. *State v. Diaz*, 611 S.W.3d 373, 374 (Mo. App. S.D. 2020) (citing *State v. Naylor*, 510 S.W.3d 855, 858-59 (Mo. banc 2017)). The appellate court "grants great deference to the trier of fact in reviewing the sufficiency of the evidence[.]" *State v. Epenesa*, 691 S.W.3d 353, 356 (Mo. App. S.D. 2024).

Analysis

Section 571.070 states in part:

A person commits the offense of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and:

3

(1) Such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony[.]

Section 571.070.1.

"Firearm" is defined as "any weapon . . . designed or adapted to expel a projectile by the action of an explosive." Section 571.010(8), RSMo 2016. Unlawful possession of a firearm requires "(1) knowing possession of a firearm (2) by a person who has been convicted of a felony." *State v. Purifoy*, 495 S.W.3d 822, 824 (Mo. App. S.D. 2016) (quoting *State v. Glass*, 439 S.W.3d 838, 846 (Mo. App. E.D. 2014)). Section 571.070.1 does not require the firearm to be fully functional, nor does it require the State to produce the weapon in order to prove the weapon was a firearm. *State v. King*, 674 S.W.3d 218, 232-33 (Mo. App. W.D. 2023) (citing *State v. Aborn*, 445 S.W.3d 570, 572 (Mo. App. S.D. 2013)). A firearm is a weapon readily capable of lethal use and it is not required to be proven at trial that it was functional or loaded. *Id.* (citing *Williams v. State*, 386 S.W.3d 750, 754 (Mo. banc. 2012)). A weapon constitutes a firearm as long as it was "designed to expel a projectile by the action of an explosive[,]" regardless of whether the weapon can do so or did do so successfully. *Id.*

Benford argues that the State produced insufficient evidence by which a rational fact-finder could find beyond a reasonable doubt the weapon recovered from Benford's front pocket was a "firearm" as defined by section 571.010(8). Benford claims that there is no evidence to show that the weapon was designed or adapted to expel a projectile by the action of an explosive as required by statutory definition. He states that the testimony of the two witnesses called for the matter, Officers Myers and Holdman, only provided evidence that the weapon *appeared* to be a firearm and did not provide evidence that the

4

weapon satisfied the requirements of the statutory definition. As such, Benford argues the weapon was not proven to be a firearm at all.

In viewing the evidence in the light most favorable to the verdict, there is sufficient evidence to believe the weapon found in Benford's right pocket was a firearm as defined by section 571.010(8). Here, the State provided sufficient testimonial evidence to support the finding that the weapon found on Benford was, in fact, a firearm. Both testifying officers identified the weapon in question as a 9-millimeter Taurus PT111, and it is not disputed that 9-millimeter Taurus PT111 handguns are designed to expel a projectile by the action of an explosive.

Both Officer Myers and Officer Holdman were equipped with many years of firearm experience through police training and personal use. Officer Myers testified she personally had a gun "just like" the one found on Benford during the police search, and further testified that she was specifically familiar with Taurus guns. Upon identifying the weapon found in Benford's front pocket as a 9-millimeter Taurus handgun, Officer Holdman testified he had owned firearms for "as long as [he could] remember" and grew up in a family that owned firearms. The identification of the weapon as a firearm by experienced officers could lead a reasonable fact-finder to find the weapon to be a firearm. Further, the testimony of Officer Myers suggested the weapon was found alongside ammunition, which could lead a reasonable fact-finder to believe that the weapon was capable of expelling such ammunition. Beyond witness testimony, the weapon was admitted as an exhibit at trial, and the fact-finder was able to see and identify the item in their own capacity. The testifying witnesses and their identification of the weapon as a 9-millimeter Taurus PT111 alongside the ability of the trial court to

5

categorize the weapon as a firearm during trial provides sufficient basis for a finder of fact to find the weapon to be a firearm.

A review for the sufficiency of the evidence evaluates only whether there exists enough evidence to permit a reasonable fact-finder to conclude the defendant is guilty of the charged offense beyond a reasonable doubt. *State v. Salsman*, 686 S.W.3d 376, 387 (Mo. App. S.D. 2024). It is not for the appellate court to determine the credibility of witnesses as the fact-finder may "believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony[.]" *State v. Ingalsbe*, 557 S.W.3d 515, 519 (Mo. App. S.D. 2018) (quoting *State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008)). With two police officers' testimony identifying the weapon as a 9-millimeter Taurus PT111 gun with ammunition--which Benford does not deny is a type of gun that satisfies the statutory definition of a firearm--and the ability of the fact-finder to observe the weapon as an exhibit during trial, the State provided sufficient evidence for a reasonable trier of fact to find Benford guilty of unlawful possession of a firearm under section 571.070. Benford's sole point on appeal is denied.

### Conclusion

The evidence introduced at trial, when viewed in the light most favorable to the verdict, was sufficient to support Benford's conviction of unlawful possession of a firearm under section 571.070. The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

JACK A. L. GOODMAN, J. – CONCURS

MATTHEW P. HAMNER, J. – CONCURS